CC

FILED
OCT 18 2017
Judge Robert M. Dow, Jr.
United States District Court

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JASON NAPODANO | No. 17 CR 633<br><br>Judge Robert M. Dow, Jr. |

## PLEA AGREEMENT

1. This Plea Agreement between the Acting United States Attorney for the Northern District of Illinois, JOEL R. LEVIN, and defendant JASON NAPODANO, and his attorney, CHRISTINA EGAN, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Agreement have agreed upon the following:

### Charge in This Case

2. The information in this case charges defendant with securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78(ff) and Title 17, Code of Federal Regulations, Section 240.10b-5.

3. Defendant has read the charge against him contained in the information, and that charge has been fully explained to him by his attorney.

4. Defendant fully understands the nature and elements of the crime with which he has been charged.

### Charge to Which Defendant Is Pleading Guilty

5. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the information, which charges defendant with securities fraud, in violation of Title 15,

United States Code, Sections 78j(b) and 78(ff) and Title 17, Code of Federal Regulations, Section 240.10b-5.

**Factual Basis**

6.     Defendant will plead guilty because he is in fact guilty of the charge contained in the information. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to Guideline § 1B1.3:

Beginning no later than October 2012, and continuing through in or about May 2015, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant JASON NAPODANO, directly and indirectly, by the use of means and instrumentalities of interstate commerce, willfully used and employed, in connection with the purchase and sale of securities, a manipulative and deceptive device and contrivance, in contravention of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing a device and scheme to defraud; and (b) engaging in an act, practice, and a course of business which operated and would operate as a fraud and deceit upon any person, in violation of Title 15, United States Code, Sections 78j(b) and 78ff(a).

Defendant was previously employed as a Managing Director at a division of Company A, an investment research firm located in Chicago, Illinois. As part of his job duties at Company A, defendant authored equity research reports on companies in the biotechnology and pharmaceutical fields. These reports generally contained positive

2

recommendations about the companies defendant covered. Following the public release of the reports, the stock prices of the covered companies sometimes increased.

Defendant understands that Company A had written policies expressly forbidding employees from misusing or disclosing confidential information and from trading stock on the basis of material, non-public information learned as part of their job. Defendant agrees that the contents and release date of his reports was confidential information belonging to Company A. Defendant knew that he was not supposed to disclose or use confidential information to trade stock.

On a number of occasions during his employment at Company A, defendant purchased stock in companies that he covered in his research reports prior to those reports being publicly released. Defendant later sold the stock which was usually after his research reports became public and sometimes profited after the stock prices of the covered companies increased.

One example involves Company B. On February 25, 2014, Company A issued a research report about Company B that defendant authored. In the report, defendant recommended purchase of Company B stock as an "Outperform." Defendant stated in his research report that Company B's shares were "meaningful[ly] undervalued," described the company's current market value as "bafflingly low," and said that the stock had "tremendous upside to investors." At the time of the report, Company B stock was trading at $0.38 per share. In his report, defendant listed a target price of $0.90 per share. A

3

disclosure in defendant's report stated that Company A analysts were "restricted from holding or trading securities in the issuers which they cover."

On February 21, 2014, four days before defendant's Company B report was publicly released, defendant purchased 50,000 shares of Company B stock at prices ranging from $0.3830 to $0.3950 per share. Three days later, on February 24, 2014, one day before his research report was released, defendant purchased another 25,000 shares at $0.3759 and $0.3760 per share. On February 27, 2014, two days after his research report on Company B was publicly released, defendant started selling his Company B shares, and sold all 75,000 shares by March 4, 2014, at prices ranging from $0.45 per share to $0.4872 per share. Defendant made a profit of approximately $5,708 on these trades.

On or about February 24, 2014, defendant used the internet to access his brokerage account to enter an order to purchase 20,000 shares of Company B stock, one day before his research report on Company B was publicly released.

In addition to trades before and after research reports he authored, at times defendant also traded on the basis of other material, non-public information he learned as part of his job duties, including material, non-public information about companies he covered. One example involves Company C.

On January 14, 2014, Company C publicly announced that it acquired in-licensing rights to a drug used to treat Parkinson's Disease. Prior to that public announcement, Company C's CEO sent an email to Bilal Basrai, who was then employed as the Director

4

of Investment Banking at a company owned by the same person who owned Company A. In the email, Company C's CEO asked Basrai if defendant could use his twitter account to publicize the in-licensing agreement after it was publicly announced. On Friday, January 10, 2014, Basrai forwarded the email he received from Company C's CEO to defendant. At that time, defendant learned about Company C's in-licensing agreement and that it was to be publicly announced early the next week.

On the same day defendant received the email from Basrai, he purchased 5,000 shares of Company C stock at $0.0835 per share. On January 13, 2014, he purchased another 500,000 shares at $0.0874 per share. On January 14, 2014, after Company C publicly announced the in-licensing agreement, defendant sold the shares at prices ranging from $0.0970 to $0.1020 per share, resulting in a profit to defendant of approximately $6,000.

7. Defendant, for purposes of computing his sentence under Guideline § 1B1.2, stipulates to having committed the following additional offense:

Beginning in or about October 2012, and continuing until in or about June 2015, defendant knowingly devised, intended to devise, and participated in a scheme to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and in furtherance of the scheme caused the use of interstate wire transmissions, in violation of Title 18, United States Code, Section 1343.

During the relevant time period, defendant was a contributor for Company D, which operated a website where contributors could post investment research articles available to subscribers and to the public. Defendant posted investment research articles on Company D's website related to companies in the biotechnology and pharmaceutical fields. Defendant's articles usually contained positive recommendations about the companies he covered, and the stock prices of the companies sometimes went up following the release of defendant's articles. Defendant's articles generally contained written language stating that defendant owned no stock in the companies he covered and would not own any such stock for 72 hours after his articles were publicly released.

In certain instances, defendant owned stock in companies he wrote about and posted to Company D's website, contrary to the disclosure in his articles. In most of those instances, he purchased the stock shortly before his articles were publicly released. On those occasions, defendant falsely stated his ownership interest in the reports while knowing that he owned such stock. At times defendant sold the stock soon after his articles were publicly released following an increase in the stock price.

On or about December 13, 2013, defendant caused an interstate wire communication to be transmitted to enter an order to purchase 10,000 shares of stock of a company about which defendant wrote a December 16, 2013, article published on Company D's website. The article falsely stated that defendant owned no shares in the company being covered in

6

the article, and that defendant would own no such shares within 72 hours of the article's release.

## Maximum Statutory Penalties

8. Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

    a. A maximum sentence of 20 years' imprisonment. This offense also carries a maximum fine of $5,000,000. Defendant further understands that the judge also may impose a term of supervised release of not more than three years.

    b. Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court unless it determines that restitution is not applicable because the number of identifiable victims is so large as to make restitution impracticable or determining complex issues of fact related to the cause or amount of the victim losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process.

    c. In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty or restitution imposed.

## Sentencing Guidelines Calculations

9. Defendant understands that in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

10. For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

    a. **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2016 Guidelines Manual.

8

b. **Offense Level Calculations**.

i. The offense of conviction and stipulated offense are grouped pursuant to Guideline § 3D1.2(d).

ii. The base offense level is 8, pursuant to Guideline §§ 2B1.4 and 3D1.3.

iii. The government takes the position that, pursuant to Guideline §§ 2B1.1(b)(1)(F) and 2B1.4(b)(1), defendant's base offense level for the offense of conviction and stipulated offense is increased by 8 levels because the amount of defendant's gain was more than $95,000 but less than $150,000. Defendant disagrees with the government's position. Each party reserves the right to present evidence and argue in support of its position at sentencing.

iv. Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

    v.  In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

    c.  **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

    d.  **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, it is the government's position that the anticipated offense level is 13, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of 12 to 18 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose. Defendant disagrees with the government's position. Each party reserves the right to present evidence and argue in support of its position at sentencing.

    e.  Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and are non-binding predictions

10

upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

11. Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

### Agreements Relating to Sentencing

12. Each party is free to recommend whatever sentence it deems appropriate.

13. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

14. Regarding restitution, the parties agree that restitution is not applicable because the number of identifiable victims is so large as to make restitution impracticable and determining complex issues of fact related to the cause or amount of the victim losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process.

15. Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

16. Defendant agrees that the United States may enforce collection of any fine imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

17. This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 17 CR 633.

18. This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

19. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

    a. **Right to be charged by indictment**. Defendant understands that he has a right to have the charge prosecuted by an indictment returned by a concurrence of twelve or more members of a grand jury consisting of not less than sixteen and not more than twenty-three members. By signing this Agreement, defendant knowingly waives his right to be prosecuted by indictment and to assert at trial or on appeal any defects or errors

13

arising from the information, the information process, or the fact that he has been prosecuted by way of information.

      b.    **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charge against him, and if he does, he would have the right to a public and speedy trial.

          i.    The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

          ii.    If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

          iii.    If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt. The jury would have to agree unanimously before it could return a verdict of guilty or not guilty.

    iv.  If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

    v.  At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

    vi.  At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

    vii.  At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

  c.  **Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

20. Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

**Presentence Investigation Report/Post-Sentence Supervision**

21. Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charge against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

22. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

23. For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

24. Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

25. Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## Conclusion

26. Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

27. Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

28. Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

29. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

30. Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: 10/18/17

_____
JOEL R. LEVIN
Acting United States Attorney

_____
JASON A. YONAN
Assistant U.S. Attorney

_____
JASON NAPODANO
Defendant

_____
CHRISTINA EGAN
Attorney for Defendant